**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 21-CV-20813-GAYLES/TORRES

BERNABE MACIAS, JR.,
ESPERANZA A. MACIAS, and
MARIA MACIAS CARRERAS,
individually and as personal
representative of the ESTATE
of ALVARO CARLOS CARRERAS,
deceased,

    *Plaintiffs,*

v.

CELEBRITY CRUISES INC.,

    *Defendant.*

_____/

**REPORT AND RECOMMENDATION**
**ON DEFENDANT'S MOTION TO DISMISS**

This matter is before the Court on Celebrity Cruises Inc.'s ("Defendant") motion to dismiss Plaintiffs' Complaint. [D.E. 7]. Plaintiffs responded to Defendant's motion on July 20, 2021, [D.E. 9], to which Defendant replied on July 27, 2021. [D.E. 10]. Therefore, Defendant's motion is now ripe for disposition. After careful consideration of the motion, response, reply, relevant authority, and for the reasons discussed below, Defendant's motion to dismiss should be **GRANTED in part** and **DENIED in part**.[1]

---

[1] On August 11, 2021, the Honorable Darrin P. Gayles referred Defendant's motion to dismiss to the undersigned Magistrate Judge for disposition. [D.E. 11].

1

## I.  BACKGROUND

In the light most favorable to Plaintiffs, this complaint alleges that on March 1, 2020, four family members – Bernabe Macias, Jr., his wife, Esperanza Macias, his sister, Maria Carreras, and his brother-in-law, Alvaro Carreras – boarded the *Celebrity Eclipse* cruise ship in Buenos Aires, Argentina, as fare-paying passengers. At the time of boarding, all the family members were over 65 years of age and none were experiencing any symptoms associated with COVID-19. They were scheduled to disembark on March 15, 2020, in San Antonio, Chile; however, amid widespread publicity concerning COVID-19 outbreaks around the world, the Chilean government prohibited non-Chilean passengers from disembarking in Chile. Because all the family members were citizens of the United States and residents of Miami-Dade County, they had no choice but to remain on the *Celebrity Eclipse*.

After being turned away from Chile, Defendant, through its agents aboard the *Celebrity Eclipse*, continued to offer its remaining passengers a full schedule of entertainment, buffet-style dining options, free alcoholic beverages, and activities that placed passengers in close proximity to one another (e.g., dancing). Additionally, through its agents aboard the *Celebrity Eclipse*, Defendant represented to its remaining passengers that no person on board had contracted COVID-19 and that "all guests" were in good health. Prior to their disembarkation, however, two of the family members – Mr. Macias and Mr. Carreras – presented to the ship's infirmary with COVID-19 symptoms. Neither of them was tested to confirm whether they contracted COVID-19.

All four family members disembarked in San Diego, California, on March 30, 2020. They were immediately transported by bus to the airport and then flew to Miami. Upon arriving in Miami on March 31, 2020, they went to a local hospital and were tested for COVID-19. Three of them tested positive for COVID-19 at that time, and Mrs. Macias received a positive test result two weeks later.

Mr. Carreras, who suffered from Muscular Dystrophy, was admitted to the hospital on April 4, 2020 in connection with his COVID-19 diagnosis. He was discharged to a rehabilitation center on May 13, 2020, and later discharged from the rehabilitation center on June 13, 2020. Mr. Carreras continued to decline, however, and he returned to the hospital on January 17, 2021, suffering from hypercapnic respiratory failure. He died on February 2, 2021.

Plaintiffs allege that they contracted COVID-19 aboard the *Celebrity Eclipse* or, alternatively in the case of Mrs. Macias, contracted COVID-19 by "contagion from passengers" who contracted COVID-19 aboard the *Celebrity Eclipse*. Accordingly, Plaintiffs complain that Defendant is liable for the harm associated with their COVID-19 infections because of Defendant's negligence and its intentional and/or reckless infliction of emotional distress. Therefore, Defendant seeks to dismiss the Complaint (or strike certain aspects of the relief sought) for the reasons discussed below.

## II. APPLICABLE PRINCIPLES AND LAW

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for failure to state a claim upon which relief can be granted. "To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Conclusory statements, assertions or labels will not survive a Rule 12(b)(6) motion to dismiss. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (setting forth the plausibility standard). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citation omitted). Additionally:

> Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; *see also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

*Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449, 453 n.2 (2012). The Eleventh Circuit has endorsed a "two-pronged approach" in applying these principles: (1) eliminate any allegations in the complaint that are merely legal conclusions; and (2) where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *American*

*Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (internal quotations omitted).

Under Federal Rule of Civil Procedure 12(f), the Court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." A motion to strike is intended to clean up the pleadings, removing irrelevant or confusing allegations. *See Williams v. Delray Auto Mall, Inc.*, 289 F.R.D. 697, 699-700 (S.D. Fla. 2013).

### III. ANALYSIS

Defendant seeks to dismiss the Complaint for three reasons. First, Defendant argues that the Complaint includes a "hidden" negligent misrepresentation claim, which lacks the specificity required by Federal Rule of Civil Procedure 9(b) and, therefore, fails to state a claim. [D.E. 7 at 9-10]. Second, Defendant argues that Mrs. Macias fails to allege a plausible causation theory with regard to her negligence claim. *Id.* at 7-8. Third, Defendant contends that the facts alleged in the Complaint are not "outrageous" as a matter of law, resulting in Plaintiffs' failure to state a claim for intentional infliction of emotional distress. *Id.* at 10-12.

Defendant also seeks to strike two material components of the Complaint. First, Defendant argues that Plaintiffs' jury-trial demand must be stricken because it is inconsistent with this Court's admiralty jurisdiction. *Id.* at 3. Second, Defendant argues that claims brought by Mr. Carreras' Estate are preempted by the Death on

5

the High Seas Act[2] ("DOHSA"), thereby requiring certain damages allegations to be stricken. *Id*. at 2-6. The Court will examine each argument in turn.

### A. *The Negligence claim must be repleaded.*

Nestled within Plaintiffs' negligence claim, in Paragraph 26(g), is the allegation that Defendant breached its duty of care by making "the affirmative misrepresentation that 'all guests' aboard were in good health after March 15, 2020." [D.E. 1, ¶ 26]. Defendant argues that this constitutes a "hidden" claim for negligent misrepresentation, which should be subject to the heightened pleading standards for fraud-based claims that is imposed by Rule 9(b). [D.E. 7 at 9-10]. In response, Plaintiffs agree that there is negligent misrepresentation claim within Count One of their Complaint and argue that their factual allegations satisfy Rule 9(b)'s particularity requirements. [D.E. 9 at 1-6]. At this juncture, however, the Court is less concerned with whether the Complaint satisfies Rule 9(b) than whether Plaintiffs should be permitted to proceed with a "hidden" cause of action in their Complaint.

In a separate case involving the same *Celebrity Eclipse* cruise, Plaintiffs' counsel was previously admonished for precisely this improper method of pleading, which "commits the sin of not separating into a different count each cause of action or claim for relief." *See Kantrow v. Celebrity Cruises Inc.*, Case No. 20-cv-21997-JAL, [D.E. 4] (S.D. Fla. May 13, 2020) (quoting *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015)). As Judge Lenard noted in *Kantrow*, shotgun pleadings "wreak havoc on the judicial system" and "divert already stretched

---

[2] 46 U.S.C. § 30301, *et seq*.

6

judicial resources into disputes that are not structurally prepared to use those resources efficiently." *Id.* (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1130 (11th Cir. 2001) and *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006)).

Here, the Court gleans at least three distinct negligence-based torts from the language of Paragraph 26: (1) negligent acts or omissions relating to Defendant's duty to warn; (2) negligent acts or omissions relating to Defendant's duty to protect; and (3) the "hidden" negligent misrepresentation claim in Paragraph 26(g). [D.E. 1, ¶ 26]. Therefore, to comply with Rule 8 and avoid the confusion that will flow from this amalgam of negligence claims, Count One should be dismissed with leave to amend under Rule 12(b)(6). Separate theories of negligence must be asserted independently and with the appropriate factual support, and when those theories sound in fraud – as Plaintiffs' negligent misrepresentation claim most certainly does – the factual allegations must meet the heightened pleading standards of Rule 9(b).

In their response in opposition to the motion to dismiss, Plaintiffs expressly seek leave to amend their Complaint pursuant to Federal Rule of Civil Procedure 15 should the Court grant any of the relief sought by Defendant. [D.E. 9 at 19]. The Court finds that granting Plaintiffs leave to amend its Complaint is warranted and in the interest of justice. *See* Fed. R. Civ. P. 15(a)(2). Accordingly, Plaintiffs should replead their negligence claims, but they must do so consistently with federal pleading standards. To the extent that the claim or claims are supported by specific factual allegations, they should be tethered to the specific legal duty that is allegedly

breached and separated accordingly in separate counts. And the law is quite clear that negligent misrepresentation claims are measured under Rule 9(b) that requires pleading with particularity. *See, e.g., Lamm v. State Street Bank and Trust*, 749 F.3d 938, 951 (11th Cir. 2014) ("Rule 9(b)'s heightened pleading standard applies to negligent misrepresentation claims."). The existing one-line claim in Paragraph 26(g), which appears to echo the same fact pled in Paragraph 14, grossly fails to meet that standard. If they cannot meet that standard, Plaintiffs should rely instead on the traditional breach of duty negligence claims that are not subject to a particularity requirement.

### B.  *Defendant's causation argument regarding Mrs. Macias' negligence claims is denied as moot.*

Having dismissed Plaintiffs' existing negligence claim, Defendant's argument regarding Mrs. Macias' failure to allege a plausible causation theory in support of her negligence claim has been rendered moot. [*See* D.E. 7 at 7-8]. If Defendant believes that the causation element of Mrs. Macias' negligence claim remains deficient in a subsequently amended complaint, then Defendant may reiterate this argument at the appropriate time, but with the understanding that causation is typically not justiciable on a motion to dismiss.

### C.  *The alleged facts are not "outrageous" as a matter of law.*

Defendant argues that its conduct, as described in the Complaint, is not "outrageous" as a matter of law and, therefore, Plaintiffs' claims for intentional and/or reckless infliction of emotional distress ("IIED") should be dismissed pursuant to Rule

8

12(b)(6). [D.E. 10-12]. The Court agrees. Plaintiffs' IIED claim alleged in Count Two should be dismissed with prejudice.

Courts sitting in admiralty "typically look to the standards set out in the Restatement (Second) of Torts § 46 (1965) as well as state law" to evaluate IIED claims. *Kantrow v. Celebrity Cruises Inc.*, 510 F. Supp. 3d 1311, 1324 (S.D. Fla. 2020) (quoting *Broberg v. Carnival Corp.*, 303 F. Supp. 3d 1313, 1317 (S.D. Fla. 2017)). Accordingly, to state a claim for IIED under Florida law, the plaintiff must plead the following elements: (1) extreme and outrageous conduct; (2) an intent to cause, or reckless disregard to the probability of causing, emotional distress; (3) severe emotional distress suffered by the plaintiff; and (4) that the conduct complained of caused the plaintiff's severe emotional distress. *Id*.

Here, the issue is whether the facts alleged in the complaint qualify as "outrageous" conduct. Whether conduct is outrageous enough to support a claim for IIED is a question of law for the court to decide. *Id*. And while there is not an exhaustive list of what constitutes "outrageous" conduct, Florida common law has evolved an extremely high standard. *Id*. Accordingly, "outrageous" conduct is that which "goes beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community." *Id*. (internal quotation marks omitted).

Plaintiffs argue that the facts alleged in Complaint, specifically in Paragraph 26, sufficiently illustrate "outrageous" conduct. [D.E. 9 at 14-16]. So, Plaintiffs contend that Defendant's failure to warn them that person's aboard the *Celebrity Eclipse* had symptoms consistent with COVID-19, Defendant's failure to test

9

symptomatic persons aboard the *Celebrity Eclipse* for COVID-19, Defendant's failure to recommend isolation and to quarantine symptomatic persons aboard the *Celebrity Eclipse*, Defendant's failure to suspend buffet service and other social gatherings, Defendant's disbursement of free alcoholic beverages to passengers, and Defendant's affirmative misrepresentation that "all guests" aboard the Celebrity Eclipse remained in good health after March 15, 2020 exceeds "all possible bounds of decency" and should be regarded as "atrocious and utterly intolerable" in a civilized community. *See id.*

To support their argument, Plaintiffs rely on two cases that previously found "outrageous" conduct: *Thomas v. Hickman*, Case No. 06-0215-AWI, 2007 WL 470611 (E.D. Cal. Feb. 9, 2007) and *Dominguez v. Equitable Life Assurance Soc'y of the U.S.*, 438 So. 2d 58 (Fla. 3d DCA 1983). *Id.* at 15-16. In *Thomas*, the plaintiff alleged that defendants removed her ovaries during a biopsy and cystectomy procedure, lied to plaintiff about what happened during her surgery, and then failed to properly treat plaintiff after the removal of her ovaries. *Thomas*, 2007 WL 470611 at *14-15. In *Dominguez*, the plaintiff alleged that the defendant-insurer falsely represented that it received a letter from plaintiff's eye doctor stating that plaintiff's vision had sufficiently improved and, therefore, he was no longer totally disabled, which meant he was no longer covered under the defendant-insurer's disability policy; accordingly, the defendant-insurer tried to get plaintiff to sign a paper agreeing that he was no longer entitled to receive benefits under the policy and, therefore, was giving up the policy voluntarily. *Dominguez*, 438 So. 2d at 61-62.

Aside from the fact that those defendants' alleged fraudulent conduct had a direct relationship to Plaintiffs' physical health, the Court finds both *Thomas* and *Dominguez* to be materially distinguishable from this case. Removing a woman's ability to procreate and then lying to her about it clearly exceeds all possible bounds of decency and is rightly considered intolerable in a civilized society. Lying to an insured about his physical health in an attempt to persuade him to voluntarily waive his entitlement under an insurance policy is similarly outrageous. But the allegations in this Complaint pale by comparison. Even in the light most favorable to Plaintiffs, they do not allege intentional fraud; instead, they allege negligent acts committed while trying to humanely deal with a nascent crisis. So, Defendant's actions might sound in negligence but certainly do not exceed all possible bounds of decency.

Moreover, this Court has already rejected substantially similar IIED claims from other passengers on the *Celebrity Eclipse* in at least two other cases. *See Kantrow*, 510 F. Supp. 3d at 1323-25; *Poe Paul v. Celebrity Cruises Inc.*, Case No. 21-cv-20814-JAL, [D.E. 22 at 30-32] (S.D. Fla. July 15, 2021). In rejecting those IIED claims, both *Kantrow* and *Poe Paul* primarily relied upon *Brown v. Royal Caribbean Cruises, Ltd.*, Case No. 16-cv-24209, 2017 WL 3773709 (S.D. Fla. Mar. 17, 2017). In *Brown*, the plaintiff received notice *after* boarding the cruise ship that Legionnaires' disease had been discovered in the ship's water system and that two cases of Legionnaires' disease had been confirmed within the past several months. *Brown*, 2017 WL 3773709, at *1. The plaintiff was not notified of this condition before the ship was out to sea, even though the defendant allegedly knew of the condition, and

11

the plaintiff ultimately contracted Legionnaires' disease, resulting in hospitalization, kidney disease, congestive heart failure, pulmonary failure, and his forced retirement. *Id*. The Court in *Brown* found the defendant's conduct to be "truly objectionable," but not outrageous as a matter of law. *Id*. at *3; *see also Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 842 (11th Cir. 2002) (finding no outrageous conduct where crew member remarked, within plaintiff's earshot after her husband fell overboard, that her husband was probably dead, having been sucked under the ship and chopped up by the propellers); *Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1339 (S.D. Fla. 2012) (finding no outrageous conduct where crew members kicked and punched plaintiff before they handcuffed her, dragged her across the casino floor, and then prevented her from leaving her room until the following day). Accordingly, in both *Kantrow* and *Poe Paul*, the Court found that, if the conduct alleged in *Brown* legally fell short of "outrageous," then the conduct alleged to have taken place aboard the *Celebrity Eclipse* in March 2020 must also fail to "rise to the level of outrageousness" required by law. *Kantrow*, 510 F. Supp. 2d at 1325; *Poe Paul*, [D.E. 22 at 32]. Thus, consistent with *Kantrow*, *Poe Paul*, and the applicable case law, Plaintiffs' IIED claims should be dismissed with prejudice.

> ### D. *The jury trial demand must be stricken because it is inconsistent with admiralty jurisdiction.*

Plaintiffs allege that subject matter jurisdiction exists under the Court's admiralty and maritime jurisdiction. [D.E. 1, ¶ 4]. Despite proceeding exclusively under the Court's admiralty jurisdiction, Plaintiffs demand a jury trial. *Id*. at 7. This demand is misplaced.

It is well established that there is generally no right to a jury trial in admiralty cases. *See Beiswenger Enters. Corp. v. Carletta*, 86 F.3d 1032, 1037 (11th Cir. 1996) ("[A]s in all admiralty cases, there is no right to a jury trial."); *McNair v. Royal Caribbean Crusies, Ltd.*, Case No. 21-cv-21048, 2021 WL 1062588, at *2 (S.D. Fla. Mar. 19, 2021) ("The [p]laintiff's demand for a jury trial is incompatible with a case proceeding solely under the Court's admiralty jurisdiction.").

Despite their argument to the contrary, Plaintiffs cannot rely on the "saving to suitors" clause of 28 U.S.C. § 1331(1) to justify their jury trial demand because that clause only "establishes the right to choose whether to proceed within a court's admiralty jurisdiction or general civil jurisdiction when *both* admiralty and non-admiralty federal jurisdiction exist." *St. Paul Fire & Marine Ins. Co. v. Lago Canyon, Inc.*, 561 F.3d 1181, 1194 n. 5 (11th Cir. 2009) (Wilson, J. concurring) (citing Waring v. Clarke, 46 U.S. 441, 461 (1847)) (emphasis added); *see also Salty Dawg Expedition, Inc. v. Borland*, 301 F. Supp. 3d 1189, 1191 (M.D. Fla. 2017) ("The decisions consistently interpret the saving-to-suitors clause to preserve the right to a jury trial if the plaintiff in an admiralty dispute successfully invokes a jurisdiction other than admiralty[.]"). Thus, to obtain a jury trial under the "saving to suitors" clause, an independent basis for federal subject matter jurisdiction (*e.g.*, diversity of citizenship) must be satisfied. *St. Paul Fire & Marine Ins. Co.*, 561 F.3d at 1194 n. 5 (Wilson, J. concurring). Because this case is proceeding exclusively under the Court's admiralty jurisdiction, Plaintiffs' jury trial demand is improper and is, therefore, stricken pursuant to Rule 12(f) as immaterial and impertinent. *See, e.g., Neenan v. Carnival*

*Corp.*, Case No. 99-cv-2658, 2001 WL 91542, at *2 (S.D. Fla. Jan. 29, 2001) (finding no right to a jury trial where plaintiffs brought negligence claim under admiralty jurisdiction, no independent federal subject matter jurisdiction existed, and defendant did not consent to a jury trial).

Plaintiffs alternatively request an advisory jury under Federal Rule of Civil Procedure 39(c), which provides that, where an action is not triable of right by a jury, the Court may try any issue with an advisory jury. [D.E. 9 at 18-19]. Where an advisory jury is empaneled, it exists merely to assist the judge, who is not bound to accept the advisory jury's findings. *See Sheila's Shine Prod., Inc. v. Sheila Shine, Inc.*, 486 F.2d 114, 122 (5th Cir. 1973). Accordingly, because an advisory jury is a function of assistance and not of right, the Court's decision on whether to use an advisory jury is discretionary. *See id.*

Plaintiffs submit, without substantive elaboration or supportive case law, that the "unique and compelling circumstances" of this case justify the assistance of an advisory jury. [D.E. 9 at 19]. The Southern District of Florida is currently working through the pandemic-related backlog of trials for parties entitled to a jury trial, and that reality informs the Court's recognition that empaneling an advisory jury would require the additional expenditure of judicial resources relating to the selection of jurors and the provision of jury instructions. *See New York Marine & Gen. Ins. Co. v. Boss Interior Contractors, Inc.*, Case No. 20-cv-23777, 2021 WL 1535401, at *3 (S.D. Fla. Apr. 19, 2021) (denying an advisory jury request for similar reasons). Accordingly, the balance of interests weighs against the use of an advisory jury, and

14

so Plaintiffs' request is denied at this premature stage. But Plaintiffs are free to raise the topic again as trial draws near, because ultimately the decision to empanel an advisory jury is more of a trial-related discretionary judgment, as opposed to a matter addressed as a matter of law in connection with a Rule 12 motion. So, the Court's rejection of the advisory jury as a matter of pleading should not be seen as a final determination on the ultimate question.

### E.     *It is too soon to decide the DOHSA issue.*

For its part, Defendant also asks the Court to make premature findings in the course of a Rule 12(b) motion. Specifically, Defendants argue, with respect to the claims brought by the Mr. Carreras' Estate, that DOHSA should apply and, therefore, its application merits the striking of certain damages allegations made by Mr. Carreras' Estate. [D.E. 7 at 4-7]. Having already recommended dismissal of Plaintiffs' negligence claim and dismissed Plaintiffs IIED claim with prejudice, however, the Court finds that it is simply too early in the litigation to assess whether DOHSA applies to any claims brought by Mr. Carreras' Estate. Moreover, the limitation of damages is generally regarded as an affirmative defense that can and should be pleaded, but which must be adjudicated at a later stage of the case.

### IV.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendant's motion to dismiss be **GRANTED in part** and **DENIED in part**:

A.     Count One should be **DISMISSED** with leave to amend.

B.     Defendant's motion to dismiss Count Two should be **GRANTED with**

15

    **prejudice**.

C. In all other respects, Defendant's motion to dismiss should be **DENIED**.

D. Defendant's motion to strike Plaintiffs' demand for a jury trial should be **GRANTED**.

E. Defendant's motion to strike non-pecuniary damages allegations from the Estate of Alvaro Carlos Carerras' claims pursuant to the Death on the High Seas Act should be **DENIED** without prejudice.

F. Any amended complaint should be due within fourteen (14) days from the date the District Judge adopts this Report and Recommendation.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 19th day of November, 2021.

            */s/ Edwin G. Torres*
            EDWIN G. TORRES
            United States Magistrate Judge